UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHASTA M.,

**Plaintiff,**

                                                        Case No. 1:22-cv-00613-TPK

    v.

**COMMISSIONER OF SOCIAL**                    OPINION AND ORDER
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

      Plaintiff filed this action under 42 U.S.C. §405(g) seeking review of a final decision of the Commissioner of Social Security. That decision, issued by an Administrative Law Judge on April 7, 2022, following a remand from this Court, *see* Tr. 940-49, denied Plaintiff's application for supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 13), and the Commissioner has filed a similar motion (Doc. 14 ). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

### I.  BACKGROUND

      As the Court noted in its prior order, Plaintiff filed her application for benefits on September 21, 2015. After an ALJ denied her claim and the Appeals Council denied review, the Court granted Plaintiff's motion for judgment on the pleadings and remanded the case for a fuller consideration of whether Plaintiff met the criteria for disability under Section 1.04 of the Listing of Impairments.

      After remand, the ALJ held a second administrative hearing on August 12, 2021, and a third one on March 29, 2022, taking additional testimony from Plaintiff and also from two medical experts and a vocational expert. In a decision dated April 12, 2022, which also addresses another SSI claim filed on June 20, 2019, the ALJ again denied benefits.

      The details of that decision are as follows. First, the ALJ found, first, that Plaintiff had not engaged in substantial gainful activity since her application date. Next, he determined that she had severe impairments including "obesity, degenerative disc disease in the lumbar spine, degenerative disc disease in the cervical spine, bilateral carpal tunnel syndrome, bilateral shoulders asthma and anxiety disorder." (Tr. 766). He also concluded, however, that her impairments, considered singly or in combination, did not meet or equal the level of severity required to qualify for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of work at the sedentary exertional level. She had some limitations on the amount of time she could sit or walk on a continuous basis as well as a number of postural, manipulative, and environmental limitations, and she could do only simple, repetitive tasks with the ability to concentrate for two-hour segments and with only occasional interaction with others. (Tr. 770).

Plaintiff did not have any past relevant work, but the ALJ determined that, with these limitations, she could do certain unskilled sedentary jobs including document preparer, ink printer, and final assembler. He also found that such jobs existed in significant numbers in the national economy. As a result, the ALJ concluded that Plaintiff did not meet the requirements for disability under the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises this issue, stated here *verbatim*:

> Should the decision of defendant Commissioner of Social Security ("the Commissioner") denying disability be reversed because the Administrative Law Judge ("ALJ") committed legal error? Should it be reversed because the ALJ's decision was not supported by substantial evidence? (Doc. 13-1, at 2).

## II. THE KEY EVIDENCE

### A. Hearing Testimony

Plaintiff, who was 33 years old at the time of the first administrative hearing, first testified that she had a ninth grade education, having gone to school in Puerto Rico, and that her command of English was limited (she testified through an interpreter). She spent her days either seeing a doctor or doing some light chores like washing dishes or helping prepare meals. She also watched television and read. She would occasionally shop for groceries but had problems being around people. Plaintiff said her medical conditions included back pain and depression. The back pain extended all the way down her legs and also caused numbness. She could only sit for 20 minutes at a time and stand and walk for about the same amount. She was able to lift a gallon of milk. Plaintiff said that she was most comfortable lying down with a pillow beneath her legs, and she napped most days.

When asked about her depression, Plaintiff said she had days where she stayed in her room and did not want to see anyone. She also had attacks of anxiety and had sought emergency room treatment on occasion. Lastly, she testified that she had been given injections in her back but they did not help reduce the pain, nor did physical therapy.

At the second administrative hearing, Plaintiff testified that she had undergone surgery on one hand and that a second one had been scheduled for the other hand. The surgery relieved her hand pain but she lost grip strength. She had been working up to the date of surgery and then

was off work for two months, returning to a 20 hour per week job. She had also done some deliveries for Door Dash in 2021. At the third hearing, she explained her job in more detail, stating that she did sewing, making masks and other items. She was supposed to work five hours per day but was absent quite a bit.

Two medical experts, Dr. Khan and Dr. Citrin, testified at the second administrative hearing. Dr. Khan first stated that the records indicated Plaintiff suffered from some type of anxiety disorder and that it caused moderate limitations with respect to all four of the "B" criteria of the Listing of Impairments, specifically referencing section 12.06. Dr. Khan also concluded that Plaintiff could perform simple, repetitive tasks with occasional interaction with others and involving minimal changes to the workday. She could do assembly line work as well and could maintain attention for two-hour segments as well as maintain regular attendance at work. Dr. Citrin, an oncologist and internal medicine specialist, identified several severe impairments from the record including low back pain and panic attacks. The low back pain resulted from degenerative disc disease, but it was not severe enough to satisfy the criteria set out in Listing sections 1.15 and 1.16. He believed Plaintiff could lift up to ten pounds, could sit and stand without limitation, could walk for up to two hours in a workday, could occasionally stoop, kneel, crouch, or crawl, should avoid climbing, and had no other limitations.

Dr. Schneider (or Snyder - the transcript spells his name one way and the ALJ's decision spells it another) was the medical expert who testified at the third hearing. He said that, based on the records he reviewed, Plaintiff suffered from degenerative disc disease of the lumbar spine and that it was a severe impairment but that it did not satisfy the requirements of Section 1.15 of the Listing of Impairments. He also identified a number of nonsevere impairments. Dr. Schneider thought Plaintiff could lift ten pounds frequently and 11-20 pounds occasionally, that she could sit for up to three hours at a time without interruption and up to six total hours in a work day, that she could stand and walk for up to one hour at a time and up to two hours in a workday, that she could not reach overhead but could reach and handle frequently otherwise, could frequently finger and feel, could not operate foot controls, could not climb, stoop, kneel, crouch, or crawl, could frequently balance, and could not work around hazards or environmental irritants or temperature extremes. He did change his opinion about manipulative restrictions - initially he said that she could never finger and feel due to carpal tunnel syndrome - but when he recalled that he had determined that carpal tunnel syndrome was not a severe impairment, and based on the records, he concluded that she could either continuously or frequently handle, finger, and feel. He also said he agreed that the fact that Plaintiff had been able to return to sewing work after her surgery supported the conclusion that she could frequently feel and finger.

Finally, the ALJ took testimony from a vocational expert, Darren Wright, at that hearing. He was asked to assume that there was no past relevant work to consider, and was then asked questions about a person with Plaintiff's vocational profile who was limited to sedentary work with some standing and walking limitations and also with numerous postural and manipulative restrictions. There were also environmental limitations and mental limitations as described by Dr. Khan at the second hearing. In response, he identified several jobs that such a person could do, including document preparer, ink printer, and final assembler. He also provided numbers for

the jobs he identified as they existed in the national economy. In response to further questioning, he stated that the jobs had a sit/stand option and all of them required at least frequent handling and fingering as well as being off task for no more than 10% of the time and being able to attend work while missing no more than one day per month.

### B. Medical Evidence

Because Plaintiff's sole claim of error focuses exclusively on the testimony of the medical expert, Dr. Schneider, an extensive summary of the underlying medical evidence is not necessary. Briefly, as to relevant records, Dr. Miller, a consultative examiner, determined in 2016 that Plaintiff's hand and finger dexterity was intact. In 2020, Dr. Sumigray noted the possibility that Plaintiff suffered from carpal tunnel syndrome due to complaints of numbness in her hands and the fact that she was working with her hands on a daily basis. She was then seen by Dr. Mulligan for that condition in 2021, and based on testing he diagnosed her with bilateral carpal tunnel syndrome and recommended surgery with a trigger finger release as well. She had surgery on her right hand in November, 2021 and was doing well the following month. Dr. Mulligan recommended a similar procedure on her left hand, but there is no indication the surgery was performed before the date of the ALJ's decision in April, 2022, and Plaintiff did not mention it at the hearing in March, indicating that she had returned to work in February after her surgery but at reduced hours.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted);

*see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same
standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

In her claim of error, Plaintiff argues that because the ALJ assigned only partial weight to Dr. Schneider's opinion, it could not have served as substantial evidence to support the ALJ's decision.  She also expresses some concern that Dr. Schneider's resume never appears in the record and provides a lengthy critique of the way in which he analyzed Plaintiff's carpal tunnel syndrome, adding that some of the records concerning that impairment are not part of the record.  The Commissioner responds that any error with respect to Plaintiff's abilities to finger, feel, or stoop is harmless because one of the jobs identified by the vocational expert, that of ink printer, does not require these abilities, and that in any event the ALJ's decision was supported by substantial evidence.  Plaintiff has filed a reply arguing that there are substantial questions about the vocational testimony concerning the ink printer job, including the fact that it did not take into account the fact that Plaintiff does not speak English.

It is accurate that the ALJ gave only partial weight to Dr. Schneider's opinion, *see* Tr. 787.  However, that statement cannot be viewed in isolation.  Dr. Schneider opined that Plaintiff could never stoop, a limitation inconsistent with sedentary work.  The ALJ disagreed, noting that "the claimant's activities of daily living would support that the claimant could stoop, at least, on some basis."  *Id*.  The ALJ went on to point out that Plaintiff was working part-time and also drove and performed other activities requiring her to stoop on at least an occasional basis.  For these reasons, the ALJ said that "this portion of opinion is not persuasive given that inconsistency and lack of supportability of the stooping assertion made by Dr. Snyder (sic) with the evidence of record."  (Tr. 788).  That appears to have been the only issue that the ALJ had with his testimony, because the ALJ then concluded that "the rest of Dr. Snyder's opinion is consistent with the record as a whole."  He ended his discussion of the testimony by stating that "significant evidentiary consideration was given to most of Dr. Snyder's opinion in the formulation of the claimant's residual functional capacity."  *Id*.  Plaintiff appears to argue that on the key issue here - her ability to finger and feel - the ALJ also gave only partial weight to Dr. Schneider's views, thus making it unclear how the ALJ reached a residual functional capacity finding on that issue, but the record fails to support that argument.  Therefore, assuming that Dr. Schneider's opinion, as adopted by the ALJ, provides a proper basis for the finding that Plaintiff could handle, feel, and finger on at least a frequent basis, the ALJ was entitled to rely on it in reaching the conclusion that he did.

Much of Plaintiff's remaining argument appears directed to the contention that the ALJ erred by giving significant weight to Dr. Schneider's views on how frequently she could finger and feel despite her diagnosis of carpal tunnel syndrome.  Although she criticizes the ALJ for giving credence to his views based on the lack of written credentials in the record, as the Commissioner points out, Dr. Schneider testified to his professional background and

qualifications, including the fact that he was a board-certified specialist in internal medicine and had been practicing that specialty for 40 years, with a third of it devoted to occupational medicine. Plaintiff's counsel specifically stated that he had no objection to the doctor's qualifications. (Tr. 806). Under these circumstances, the ALJ did not err in accepting Dr. Schneider as an expert or weighing his testimony as expert medical opinion.

As noted above, Dr. Schneider did initially testify that Plaintiff's carpal tunnel syndrome was not a severe impairment, noting that it was of mild severity based on the type of treatment she received, but he qualified that statement by saying that it did not meet the Listing for neuropathy, which is a different question from whether it was severe. (Tr. 809-10). Later, when asked about functional limitations, he said that handling was frequent but "[f]ingering and feeling are both never, and that's due to the CTS [carpal tunnel syndrome] symptoms." (Tr. 818). The ALJ questioned that conclusion, and Dr. Schneider, recalling that he did not characterize carpal tunnel syndrome as a severe impairment, pointed to the EMG evidence and said "I really got to bring that meter up to continuous or frequent, and that's because of the EMG and the discussion of the CTS. So, those are all going to move to frequently. That's handling, fingering, feeling." (Tr. 820).

After this testimony was given, Plaintiff was then questioned about when she went back to work and said that it was in February but that her hours were reduced from 25 to 20 per week. However, she was still sewing. Turning back to Dr. Schneider, he said that he expected that Plaintiff would eventually fail at that job because of the stress it placed on her first three digits, but he agreed "100%" with the ALJ's statement that her doing that job was consistent with the change in his testimony about how often she could feel and finger. (Tr. 822).

Plaintiff characterizes the totality of Dr. Schneider's testimony on this issue as having been changed due to "a misperception of the Commissioner's definitions" and asserts that it was "not based on strong medical evidence ...." *See* Doc. 13-1, at 22. She also contends that the ALJ did not apply the supportability and consistency factors to his opinion. However, the record again belies these assertions. Dr. Schneider explained exactly what medical evidence he was relying on when he altered his position, and the ALJ clearly stated that he gave credence to the limitations expressed by Dr. Schneider because they were supported by the objective medical evidence and consistent with Plaintiff's activities of daily living. Although Plaintiff argues that the EMG evidence was misinterpreted by Dr. Schneider, she does not point to any conflicting evidence in the record which created a conflict for the ALJ to resolve. The ALJ clearly was entitled to rely on an expert's interpretation of the medical evidence; in fact, had he done otherwise and substituted his own view of the evidence for that of Dr. Schneider, he would have likely run afoul of the rule that an "ALJ is not a medical professional and is not qualified to assess a claimant's RFC on the basis of bare medical findings." *See Golden v. Saul*, 2020 WL 3248821, at *4 (W.D.N.Y. June 16, 2020). Overall, given that the issue presented is whether the ALJ was entitled, on this record, to rely on Dr. Schneider's opinion that Plaintiff could frequently feel and finger, the Court concludes that he was so entitled. As a result, Plaintiff's sole claim of error will be overruled and judgment will be entered for the defendant.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 13), **GRANTS** the Commissioner's motion (Doc. 14), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security Commissioner.

<u>**/s/ Terence P. Kemp**</u>
**United States Magistrate Judge**